**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| SCHWARTZ T. P. INC., | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. |
| | ) | |
| v. | ) | |
| | ) | |
| CHRISTOPHER A. MCCARTHY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**COMPLAINT**

Plaintiff Schwartz T. P. Inc. ("Schwartz"), by and through its undersigned counsel, files

the following Complaint against Christopher A. McCarthy ("McCarthy").  In support thereof,

Schwartz states as follows:

**NATURE OF THIS ACTION**

1.      McCarthy resigned from his position as the U. S. Sales Manager for Schwartz on

or about April 30, 2014, and, upon information and belief, immediately began working for and/or

on behalf of a direct competitor of Schwartz, Timco, Inc. ("Timco"), in a similar capacity.  This

action involves McCarthy's violations of restrictive covenants contained in his Employment

Agreement ("Agreement") that McCarthy signed on June 8, 2009, which is attached hereto as

**Exhibit A** and his misappropriation Schwartz's trade secrets**.**

2.      By this action, Schwartz seeks to restrain and enjoin McCarthy from engaging in

activities in breach of the Covenant Not to Compete contained in his Agreement and his

misappropriation of confidential information.

3.      Concurrently with this action, Schwartz has filed a demand for Arbitration with

the American Arbitration Association, seeking to recover damages suffered as a result of

McCarthy's breach of the Agreement referenced above and his misappropriation of confidential information.[1]

## PARTIES

4.     Plaintiff Schwartz T.P. Inc. is a Pennsylvania corporation headquartered in Ambridge, Pennsylvania.

5.     Defendant Christopher A.  McCarthy is an adult individual and resident of Marietta, Georgia.

## JURISDICTION AND VENUE

6.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a), in that plaintiff and each defendant are citizens of different states and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.  Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(a) in that Schwartz is headquartered in this Judicial District and a substantial part of the events giving rise to the claims in this action took and are taking place in this Judicial District.

## FACTUAL BACKGROUND

**I.     Schwartz's Business**

7.     Schwartz is a leading manufacturer and supplier of highly resistant engineering plastic solutions for a wide range of industrial fields.

8.     Schwartz is a pioneer in its field in the development and production of specifically, custom technical plastics.

---

[1] As set forth in paragraphs 29-30 below, without limiting their right to seek equitable relief of the type sought here, the parties have agreed to submit disputes relating to their Agreement and/or McCarthy's employment to arbitration with AAA.

9.      Technical plastics are high impact resistant plastics and large-sized and complex components made of application specific materials PA6G, PA12G and POM.

10.     Schwartz is involved in the research, development, engineering, construction and marketing of technical plastics.  Being involved in each stage from start to finish sets apart Schwartz as unique in its field and the confidentiality of its proprietary trade secrets is imperative to its continued success.

11.     Schwartz has developed a significant international client base in a broad range of industries.

12.     More recently, in the United States, Schwartz's client base includes business in the areas of crane and hoisting technology, elevators and escalators, drive and conveyor technology, offshore drilling and excavation, steel and rolling mills, and railway technology, among others.

13.     A large part of Schwartz's business is dependent on its relationships with its customers in specific industries and is limited to businesses that can utilize technical plastics in their trade.

14.     Schwartz is focused on growing its U.S. business and has expended significant resources developing its reputation and a targeted customer base in this country.

15.     At the same time, Schwartz has invested significant time, expense and resources to create and maintain its existing client relationships and to establish and build new connections in the U.S.

16.     Through its hard work, high-quality products, and unique applications, Schwartz has developed substantial goodwill, trade and patronage, all of which are extremely valuable to the Company and its future success.

17.     Schwartz's employs a sales team to service existing clients and build relationships with and introduce clients in these industries to the benefits of technical plastic components as compared to steel or other metal parts more traditionally used.

18.     In order to effectively pitch Schwartz's products and services to clients and prospective customers, Schwartz's sales employees are educated on Schwartz's products and are provided access to confidential information and trade secrets regarding, among other things, product development, testing, and performance.

19.     Sales employees also spend a significant time communicating with and learning confidential information about Schwartz's clients including, but not limited to, their needs, internal structures, deliverable specifications and pricing sensitivity.

20.     Schwartz maintains client information including contact information for relevant decision-makers within the customer and potential customers.

21.     Schwartz also maintains confidential trade secret information regarding the development and testing of its products, specific performance of its products and application of components to be used in conjunction with other materials.

22.     Schwartz has implemented reasonable efforts to maintain the secrecy of its confidential trade secret information, including but not limited to requiring employees to execute employment agreements and limiting access by employees to the confidential information.

23.     Moreover, Schwartz takes steps to protect its confidential trade secrets by password-protecting access to databases that contain such information, encrypting data and limiting the use of test results and other confidential information to only those employees with a specific need for access.

## II.     McCarthy' Employment with Schwartz

24.     McCarthy was employed by Schwartz from June 8, 2009 until April 30, 2014.

25.     At the time of his resignation from Schwartz, McCarthy was the U.S. Sales Manager for all Schwartz's U.S. sales.

26.     As a condition of his employment with Schwartz, McCarthy signed an Employment Agreement ("Agreement") on June 8, 2009.  A true and correct copy of the Agreement is attached as **Exhibit A**.

27.     McCarthy' Agreement contains the following Covenant Not To Compete:

> During the term of this Agreement and for a period of two (2) years …after a termination for the reasons set forth in Section 2 becomes effective (i) Employee will neither directly nor indirectly engage in or contribute his knowledge to any work or activity that involves semi-finished or finished products made of case polyamide ("Pa6/PA12) and compressed moulded phenolics ("Competitive Work"), (ii) Employee will not accept employment with or provide consulting service to Quadrant; Rochling Sustaplast, Kern, Ensinger, Licharz or other competitors that produce or intend to produce finished parts made out of Polyamide…

(Ex. A. at Section 7.)

28.     McCarthy's Agreement also contains the following provision related to confidential information:

> Employee acknowledges that: (1) the Company's products are highly specialized items; (2) the identity and particular needs of the Company's customers are not generally known in the industry; (3) the Company has a proprietary interest in the identity of its customers and customer lists; and (4) documents and information regarding the Company's methods of production, sales, pricing, costs, and the specialized requirements of the Company's customers, are highly confidential, and constitute trade secrets.   Under no circumstances shall Employee remove from the Company's office any of the Company's books, records, documents, or customer lists, or any copies of such documents, without the written permission of the Company; nor shall Employee make any copies of such books, records, documents, or customer lists, for use outside of the Company's office except as specifically authorized by the Company.
>
> *          *          *
>
> During the term of this Agreement, Employee will have access to and become familiar with various trade secrets and confidential information of the Company… Employee acknowledges that such Confidential

Information and trade secrets are owned and shall continue to be owned solely by the Company. During the term of his employment and after such employment terminates, Employee will keep all Confidential Information in strict confidence during the term and thereafter and will never, directly or indirectly, make known, divulge, reveal, furnish, make available or use any Confidential Information (except in the course of his regular authorized duties on behalf of the Company or an affiliate of the Company). Furthermore, Employee will not utilize any Confidential Information for his own benefit or the benefit of others during the term and thereafter.

(Ex. A at Section 6.)

29.     The Agreement executed by McCarthy contains the following provision regarding

injunctive relief:

Employee acknowledges that breach or threatened breach of Sections 6 and 7 of this Agreement will cause the Company irreparable harm for which there is no adequate remedy at law, and as a result of this, the Company shall be entitled to the issuance by a court of competent jurisdiction of an injunction, restraining order, or other equitable relief in favor of itself, without the necessity of posting a bond, restraining Employee from committing or continuing to commit any such violation. Any right to obtain an injunction, restraining order, or other equitable relief hereunder shall not be deemed a waiver of any right to assert any other remedy the Company may have at law or in equity. The right of the Company to seek equitable relief under this Agreement shall be in addition to (and not in derogation of) the requirement imposed on each party hereto to arbitrate disputes...

(Ex. A at Section 8.)

30.     Subject to the right to seek equitable relief, the Agreement also contains a

Mandatory Arbitration provision:

Employee and the Company agree that any claim controversy or dispute between Employee and the Company (including without limitation its affiliates, officers, Employees, representatives, or agents) arising out of or relating to this Agreement, the employment of Employee, the cessation of employment of Employee, or any matter relating to the foregoing shall be submitted to and settled by arbitration in a forum of the American Arbitration Association ("AAA") located in Philadelphia, Pennsylvania conducted in accordance with the National Rules for the Resolution of Employment Disputes.

(Ex. A at Section 8.)

31.     In executing the Agreement, McCarthy agreed to its terms.

32.     McCarthy's role as sales manager was to develop business, create client relationships, cultivate those relationships into additional sales and scout prospective clients to target for potential sales.

33.     As a Sales Manager, McCarthy had responsibility for maintaining, expanding and soliciting client business and selling Schwartz's products to customers.

34.     In this role, McCarthy had access to Schwartz's confidential information and trade secrets, including customer lists, Schwartz research material, password-protected internal databases where confidential and proprietary product research, testing and engineering material is kept, client-specific pricing strategies, buying history and trends, cost information, and prospective client information.

35.     McCarthy primarily serviced U.S. client accounts, and those clients' collective value to Schwartz, based on annual revenue, was approximately $2 million.

36.     On approximately April 30, 2014, McCarthy abruptly resigned, without notice.

37.     McCarthy's last day of work with Schwartz was April 30, 2014.

38.     Upon information and belief, McCarthy began working for Timco immediately after leaving Schwartz.

III.     **McCarthy' Violation of His Agreement**

39.     In his role with Schwartz, McCarthy had access to confidential and proprietary information related to all aspects of the Schwartz business.

40.     This information can be duplicated by competitors such as Timco and enable the competitor to produce an identical product without expending the resources, both intellectual and economic, to design and manufacture the product from concept through production.

41.     Schwartz is a pioneer in its field in part due to the research and testing it completes when developing its products.

42.     In his sales efforts, McCarthy utilized this proprietary information to market Schwartz products and was trusted with the information regarding the technical nature of the products in order to provide the customer with the best possible component to suit their business needs.

43.     As a sales manager, McCarthy would meet with high-level contacts at Schwartz's customers and potential customers to market Schwartz's line of products.

44.     Timco's market for it products is substantially the same as that of Schwartz and contains many current and prospective Schwartz customers.

45.     Timco is a related entity to Schwartz's largest competitor, Licharz.

46.     McCarthy will be selling a product line nearly identical to the products he sold for Schwartz.

47.     McCarthy has reached out to several Schwartz clients to discuss moving their business from Schwartz to Timco in direct contravention of his agreement with Schwartz.

48.     On or about May 15, 2014, McCarthy gave his new business card, noting his new title and position with Timco as Regional Sales Manager, to Schwartz's Europe-based Sales Manager, Phin Fraser ("Fraser").

49.     McCarthy requested Fraser refrain from telling anyone at Schwartz that he is now with Timco.

50.     On May 15, 2014, a current Schwartz customer ("Customer A")[2] reported to Schwartz that McCarthy had contacted him regarding replacing the orders for bearings that are currently with Schwartz with Timco products.

51.     On June 18, 2014, Customer A further reported to Schwartz that he had been contacted "3 or 4 times" by McCarthy and that McCarthy had told him that Schwartz was bankrupt.

52.     This statement was false and was intended by McCarthy to damage Schwartz's business for the benefit of Timco.

53.     McCarthy further requested that Customer A send all of his drawings and details for upcoming orders so that McCarthy could give him a quote for Timco to supply Customer A with his parts and bearings previously ordered through Schwartz.

54.     On June 24, 2014, a second Schwartz customer ("Customer B") reported to Schwartz that McCarthy had reached out to him to discuss moving his business to Timco and told Customer B that Schwartz was bankrupt.

55.     Customer B was extremely upset that he had not heard from Schwartz about the possibility of bankruptcy and despite Schwarz's reassurances that McCarthy's statements were inaccurate, Customer B requested a meeting and further explanation of the financial status of the company before placing additional orders.

56.     Schwartz believes and therefore avers that unless the relief requested herein is granted by the Court, McCarthy will continue his unlawful conduct.  Schwartz therefore seeks a preliminary and permanent injunctive relief to:  (1) enforce McCarthy' contractual restrictive

---

[2] Schwartz will reveal the identity and details of its communications with those customers identified herein as "Customer A" and "Customer B" upon entry of an appropriate protective order.

covenants not to solicit; (2) stop McCarthy's misappropriation of trade secrets from and efforts to unlawfully compete with Schwartz; and (3) protect its valuable customer relationships, confidential proprietary information and business goodwill.

57.     Enforcement of the lawful obligations owed by McCarthy to Schwartz is appropriate and necessary to protect Schwartz's legitimate business interests, customer relationships, goodwill and other trade secret information.

## COUNT I

### Schwartz v. McCarthy
### Breach of Contract

58.     Schwartz incorporates by reference Paragraphs 1-61 set forth above as if those same allegations were fully set forth in this paragraph.

59.     McCarthy is party to a valid and enforceable written contract with Schwartz, *i.e.,* the Employment Agreement, which is supported by valid consideration, as more specifically described above.

60.     The Agreement specifically prohibits McCarthy from engaging in "Competitive Work", as defined in the Agreement, accepting employment with a competitor of Schwartz and/or using or disclosing Schwartz's Confidential Information.

61.     The Agreement is both reasonable in scope and narrowly tailored to protect Schwartz's legitimate business interests.

62.     Schwartz has performed all of its obligations under the Agreement, including all conditions precedent to enforcement of the Agreement.

63.     McCarthy has breached the Agreement by accepting employment as a Regional Sales Manager for Timco.

64.     McCarthy has breached the Agreement by using Schwartz Confidential

Information to solicit business from Schwartz's customers.

65.     McCarthy's breaches of the Agreement have endangered Schwartz and expose

Schwartz to immediate and irreparable harm for which there is no adequate remedy at law.

WHEREFORE, Schwartz hereby demands judgment in its favor and against

McCarthy for preliminary and permanent injunctive relief and all costs incurred.

## COUNT II

### Schwartz v. McCarthy
### Misappropriation of Trade Secrets

66.     Schwartz incorporates by reference Paragraphs 1-68 set forth above as if those

same allegations were fully set forth in this paragraph.

67.     While employed by Schwartz, McCarthy had access to confidential client

information including information related to confidential and proprietary research, testing and

engineering material, client-specific pricing strategies, cost information, and prospective client

information, client identity and contact information, clients' plans and needs, clients' buying

history and trends, and strategic marketing plans.

68.     These trade secrets are of great economic value to Schwartz, and are not readily

ascertainable by other proper means.

69.     As such, Schwartz has made reasonable efforts to protect the confidentiality of its

trade secrets, including but not limited to, the restrictive covenant contained in McCarthy's

Agreement and the other policies and protections identified above.

70.     McCarthy knew or should have known that he had an obligation to maintain the

secrecy of such information and use it only for the benefit of Schwartz.

71.     By accepting employment as an Regional Sales Manager with a direct competitor of Schwartz, McCarthy has and will continue to misappropriate or threaten to misappropriate Schwartz's confidential/proprietary information and trade secrets in violation of the Pennsylvania Uniform Trade Secrets Act, 12 Pa. C. S. §5301 *et seq*., and common law.

72.     Moreover, the disclosure of such trade secret information is inevitable as a result of McCarthy's actions and apparent job duties in his new employment with Timco.

73.     McCarthy's conduct was and is willful, malicious and intended to cause irreparable harm as well as monetary damages to Schwartz.

74.     Schwartz is therefore entitled to preliminary and permanent injunctive relief enjoining McCarthy's misappropriation, pursuant to 12 Pa. C.S. § 5303.  In addition, Schwartz is entitled to recover its attorneys' fees pursuant to 12 Pa. C.S. § 5305.

WHEREFORE, Schwartz hereby demands judgment in its favor and against McCarthy for preliminary and permanent injunctive relief, as well as its attorneys fees' and costs.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Schwartz T.P., Inc., demands:

(a)     That McCarthy be enjoined by a preliminary and permanent enjoined from working as an employee or consultant with Timco, Inc., or any other competitive business as defined in Paragraph 7(a) in the Agreement, for a period of two years or for a period equal to the length of the breach of the Agreement, whichever is longer, which period shall run from the date of the Court's Order;

(b)     That McCarthy be enjoined by a preliminary and permanent injunction, directly or indirectly, and whether alone or in concert with others,

including any officer, agent, employee and/or representative of Timco, from using, disclosing or transmitting for any purpose the trade secrets and confidential/proprietary information of Schwartz, including but not limited to, client contact information, customer lists, business methods and strategies, pricing lists, research and testing results, product analysis, costs, customer-specific pricing, proprietary methodologies, and all other confidential/proprietary information and trade secrets which are the sole property of Schwartz;

(c)     That McCarthy, and all other persons acting in concert with him or on his behalf, be preliminarily and permanently enjoined from soliciting, servicing or doing business involving semi-finished or finished products made of case polyamide (Pa6/PA12) and compressed moulded phenolics with any customer of Schwartz for a period of two years or for a period equal to the length of the breach of the Agreement, whichever is longer, which period shall run from the date of the Court's Order;

(d)     That McCarthy, and anyone acting in concert or participation with him be further ordered to return to Schwartz any and all property of Schwartz that is in McCarthy's possession, including but not limited to, the confidential/proprietary information and trade secrets set forth above, whether in original, copied, computerized, handwritten, or any other reproduced form;

(e)     An accounting of all corporate opportunities usurped and diverted by

McCarthy, including, but not limited to, all Schwartz customers that

McCarthy has contacted while employed by Timco;

(f)     An award of attorney's fees and costs; and

(g)     Any and all other equitable relief to which Schwartz is entitled and/or

which the Court deems appropriate.

Respectfully submitted,

/s/ Theodore A. Schroeder
Theodore A. Schroeder (PA #80559)
tschroeder@littler.com
Jill M. Weimer (PA #207509)
jweimer@littler.com
**LITTLER MENDELSON, P.C.**
625 Liberty Avenue, 26th Floor
Pittsburgh, PA  15222
412.201.7624/7632
412.774.1959 (fax)

Attorneys for Plaintiff
Schwartz T. P. Inc.

Date: July 29, 2014

14