**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **SCHWARTZ T.P. INC.,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | )    **Civil No. 14-1014** |
| | ) |
| **CHRISTOPHER A. MCCARTHY,** | ) |
| | ) |
| **Defendant.** | ) |

## OPINION and ORDER

This action arises out of Christopher A. McCarthy ("McCarthy")'s alleged breach of an Employment Agreement ("Agreement") he executed with Plaintiff Schwartz T.P., Inc. ("Schwartz"), his former employer. McCarthy, who resigned his employment with Schwartz, effective April 30, 2014, has commenced employment with Timco, Inc. ("Timco"), an alleged competitor of Schwartz. It is Schwartz's contention that by working for Timco, McCarthy has breached the terms of the Agreement. Schwartz further alleges that apart from breaching the terms of the Agreement, while working for Timco McCarthy has misappropriated its trade secrets and other confidential information relating to Schwartz's products and current and prospective customers. Schwartz seeks a preliminary and permanent injunction that enjoins Schwartz from violating the Agreement and misappropriating its trade secrets and confidential information, filing both a Complaint and a Motion for Preliminary Injunction against McCarthy.

On August 25, 2014, McCarthy filed a Response in Opposition to Plaintiff's Motion for Preliminary Injunction. On that same date, he also filed a Motion to Dismiss, or in the Alternative, to Transfer; McCarthy is a citizen of Georgia. The Court ordered that a hearing be held with respect to the issue of whether it has personal jurisdiction over McCarthy. Before that

hearing was held, on September 11, 2014, McCarthy filed a Motion to Stay Arbitration in which he stated, relevant for this decision, that he was not waiving the arguments set forth in his motion to dismiss, or in the alternative, to transfer, but was making a special appearance in order to file a motion to stay arbitration proceedings which Schwartz had initiated in Philadelphia, before the American Arbitration Association, Schwartz T.P., Inc. v. Christopher McCarthy, Case No. 01-14-0001-0831, "until after such time as this Court determines that it has personal jurisdiction over McCarthy, that transfer of this matter to the United States District Court for the Northern District of Georgia is inappropriate, whether the arbitration forum selection clause in McCarthy's Employment Agreement is enforceable, and which state law should apply to the Agreement." Motion to Stay, p. 1.

The hearing on jurisdiction was held on October 2, 2014. At the conclusion of the parties' arguments, the Court met with the parties in chambers to discuss the possibility of mediating the issue. On or about October 28, 2014, the parties communicated to the Court's staff that they were not able to agree on the terms of the mediation. Accordingly, we have now examined on its merits the jurisdiction question before us and conclude that this Court has specific personal jurisdiction over McCarthy. Accordingly, Defendant's motion to dismiss is denied to the extent it is based upon a lack of jurisdiction argument. We further conclude that our Court is the proper venue for this action. Accordingly, Defendant's motion to transfer this matter to the U.S. District Court for the Northern District of Georgia also is denied.

**I. Motion to Dismiss for Lack of Personal Jurisdiction over Defendant McCarthy.**

**A. Waiver of Personal Jurisdiction argument.**

As an initial matter, Schwartz argues that by filing his Motion to Stay Arbitration and because the Agreement contains a forum selection clause, Mr. McCarthy has waived his right to

2

contest whether this Court has personal jurisdiction over him. Plaintiff's Surreply in Opposition to Defendant's Motion to Dismiss, or in the Alternative, to Transfer ("Plaintiff's Surreply"), pp. 2-5.

In Bel-Ray Co., Inc. v. Chemrite (PTY) Ltd, 181 F.3d 435 (3d Cir. 1999), our appellate court discussed waiver of personal jurisdiction:

> 'Because the requirement of personal jurisdiction represents first of all an individual right, it can, like other such rights, be waived'. Insurance Corp. of Ireland, Ltd., et al. v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 703, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982). Moreover, the 'actions of the defendant may amount to a legal submission to the jurisdiction of the court, whether voluntary or not'. Id. at 704–705, 102 S.Ct. 2099.

Id. at 443.

With respect to the contention that McCarthy waived this objection by filing his Motion to Stay Arbitration, the appellate court further explained in Bel-Ray Co., Inc.,:

> Moreover, the "actions of the defendant may amount to a legal submission to the jurisdiction of the court, whether voluntary or not." Id. at 704–705, 102 S.Ct. 2099. In particular, where a party seeks affirmative relief from a court, it normally submits itself to the jurisdiction of the court with respect to the adjudication of claims arising from the same subject matter. Adam v. Saenger, 303 U.S. 59, 58 S.Ct. 454, 82 L.Ed. 649 (1938).

> Because there "exists a strong policy to conserve judicial time and resources," we have held that "preliminary matters such as ... personal jurisdiction ... should be raised and disposed of before the court considers the merits or quasi-merits of a controversy." Wyrough & Loser, Inc. v. Pelmor Labs., Inc., 376 F.2d 543, 547 (3d Cir.1967). Accordingly, in Wyrough we held that a defendant who participates in the adjudication of the plaintiff's application for a preliminary injunction without securing a determination of his challenge to the court's personal jurisdiction over him submits himself to the jurisdiction of the court unless it is not reasonably feasible to first secure that determination. See id. This is true even where the defendant raises his personal jurisdiction defense at the earliest point required by the Federal Rules. See id.

Id. at 443. We conclude that by filing his Motion to Stay Arbitration, McCarthy, who from the very start of this litigation has contested this Court's jurisdiction over him, has not waived his right to contest jurisdiction.

With respect to the contention that McCarthy waived this objection because the Agreement at issue contains a forum selection clause, in Sam Mannino Enterprises, LLC v. John W. Stone Oil Distributor, LLC, 2014 WL 2809385 (June 23, 2014), my colleague, the Honorable Kim Gibson explained:

> It is well established that personal jurisdiction is a waivable right. Burger King v. Rudzewicz, 471 U.S. 462, 472 n. 14, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). Relevant here, a defendant may consent to personal jurisdiction through the execution of a valid forum selection clause. See Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 703–04, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982) (finding that a forum selection clause may act as consent to personal jurisdiction, thus obviating the need for the traditional minimum contacts analysis); see also, e.g., SKF USA Inc. v. Okkerse, —— F.Supp.2d ——, CIV.A. 13–5111, 2014 WL 185221 (E.D.Pa. Jan. 15, 2014). In such cases, the court need only determine the validity and effect of the forum selection clause to find that a defendant has consented to personal jurisdiction. SKF USA Inc., —— F.Supp.2d at ——, 2014 WL 185221, at *7; Provident Mutual Life Ins. Co. of Phila. v. Bickerstaff, 818 F.Supp. 116, 118 (E.D.Pa.1993) (citing Burger King, 471 U.S. at 475, 105 S.Ct. 2174). In diversity cases, federal law governs the effect to be given a contractual forum selection clause. Jumara v. State Farm Ins. Co., 55 F.3d 873, 877 (3d Cir.1995).

Id. at *2. Judge Gibson further explained that:

> Under federal law, a forum selection clause is "prima facie valid" and should be enforced unless it is "unjust or unreasonable." M/S Bremen v. Zapata Off–Shore Co., 407 U.S. 1, 10, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972). A court must enforce a forum selection clause unless the party opposing its enforceability demonstrates (1) that it is the result of fraud or overreaching, (2) that enforcement would violate a strong public policy of the forum, or (3) that enforcement would in the particular circumstances of the case result in litigation in a jurisdiction so seriously inconvenient as to be unreasonable." Coastal Steel Corp. v. Tilghman Wheelabrator, 709 F.2d 190, 202 (3d Cir.1983). This heavy burden "requires more than a showing of inconvenience or additional expense." Provident Mut. Life Ins. Co. of Philadelphia v. Bickerstaff, 818 F.Supp. 116, 118 (E.D.Pa.1993) (citations omitted).

4

Id. at *2-3.

Applying the above-cited law, if the Agreement contained a forum selection clause that was applicable to the allegations contained in Schwartz's Complaint, then assuming that said clause was valid and effective, then we would hold that based upon there being an enforceable forum selection clause, McCarthy had waived any lack of personal jurisdiction. Upon review of the Agreement, however, the sole forum selection clause in the Agreement discusses the proper forum in which to arbitrate any disputes under the Agreement, see Agreement, ¶ 8(b). Accordingly, the argument that McCarthy waived his right to object to this Court's jurisdiction because the Agreement at issue contains a forum selection clause fails.

Thus, we find that McCarthy has not waived his lack of personal jurisdiction argument. We turn next to the merits of the personal jurisdiction issue.

### B. Merits of Motion to Dismiss for lack of personal jurisdiction

As aptly summarized in Stillwagon v. Innsbrook Golf & Marina, LLC, 2012 WL 501685 (W.D. Pa.) (Hornak, J.):

> When a defendant contests personal jurisdiction, the burden shifts to the plaintiff to prove its existence. Metcalfe [v. Renaissance Marine, Inc.], 566 F.3d [324,] 330 [(3d Cir. 2009)]; Mellon Bank (E.) PSFS, Nat'l Assoc. v. Farino, 960 F.2d 1217, 1223 (3d Cir.1992). The plaintiff may establish a prima facie case of personal jurisdiction by demonstrating, with reasonable particularity, sufficient contacts between the moving defendant and the forum state. Metcalfe, 56 F.3d at 330; Farino, 960 F.2d at 1223. A plaintiff may demonstrate these sufficient minimum contacts via affidavits or other competent evidence. Metcalfe, 56 F.3d at 330 (quoting Dayhoff Inc. v. H .J. Heinz Co., 86 F.3d 1287, 1302 (3d Cir.1996)). The court must accept the plaintiff's allegations as true and construe disputed facts in his favor. Id.
>
> A district court may exercise personal jurisdiction over a non-resident defendant in accordance with the law of the state where the district court sits. Fed. R. Civ. Pro. 4(e); Abel v. Kirbaran, 267 Fed. App'x 106, 108 (3d Cir. 2008.); Eurofins Pharma U.S. Holdings v. BioAlliance Pharma S.A., 623 F.3d 147, 155 (3d Cir. 2010). As Pennsylvania's long-arm statute is coextensive with the United States

5

Constitution, the limits set by Due Process Clause of the Fourteenth Amendment govern the jurisdictional inquiry here. 42 Pa. Con. Stat. § 5322(b); Time Share Vacation Club v. Atlantic Resorts, Ltd., 735 F.2d 61, 63 (3d Cir. 1984). The Due Process Clause requires that sufficient minimum contacts exist between the non-resident defendant and the plaintiff's chosen forum for personal jurisdiction to be proper. Time Share, 735 F.2d at 63.

Personal jurisdiction exists in two forms: specific and general. Abel, 267 Fed. App'x at 108. "Specific jurisdiction" applies where the defendant purposefully directed certain of its activities at the forum state, and the cause of action arises out of those same activities. Id.; O'Conner v. Sandy Lane Hotel Co., Ltd., 496 F.3d 312, 317 (3d Cir. 2007); Centimark Corp. v. Lavine, No. 11cv0757, 2011 WL 2941214, at *5 (W.D. Pa. June 20, 2011). If these two requirements are met, the district court then considers whether the exercise of specific jurisdiction comports with notions of fair play and substantial justice. O'Conner, 496 F.3d at 317; Centimark Corp., 2011 WL 2941214, at *5. The broader jurisdictional predicate-general jurisdiction-is proper where the defendant maintains continuous and systematic contacts with the forum, making the exercise of that state's judicial power over the defendant proper. Metcalfe, 566 F.3d at 344; Abel, 267 Fed. App'x at 108.

Regarding contract claims, the Supreme Court in Burger King Corporation v. Rudzewicz, 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985), noted that parties "who reach out beyond one State and create continuing relationships and obligations with citizens of another state are subject to regulation and sanctions in the other State for the consequences of their activities." Farino, 960 F.2d 1217 at 1222 (quoting Burger King Corp., 471 U.S. at 462) (internal quotations omitted). It is not unreasonable to require a contracting party to give an account in a particular forum when that party purposely availed itself of the privilege of conducting business there or created a continuing obligation with a forum resident. See id. (citing Burger King Corp., 471 U.S. at 475–76).

That being said, the mere act of contracting with a forum resident, in absence of other contacts, is not enough to satisfy the minimum contacts requirement of the Due Process Clause. Farino, 960 F.2d at 1223. However, a court may find that the requisite connections exist when looking at the totality of the parties' relationship, including their actual course of dealing. Id.; Remick v. Manfredy, 238 F.3d 248, 256 (3d Cir. 2001). See also Telcordia Tech Inc. v. Telkom SA Ltd., 458 F.3d 172, 177–78 (3d Cir. 2006). For instance, mail and telephone communications sent by defendant into the forum are contacts supporting jurisdiction. Remick, 238 F.3d at 256; Telcordia Tech, Inc., 458 F.3d at 178.

Id. at **2-3.

Therefore, in order for Schwartz to withstand McCarthy's motion to dismiss, it must establish through competent evidence that this Court has either general jurisdiction or specific personal jurisdiction over McCarthy.

**1. General Personal Jurisdiction.**

It is McCarthy's position that this Court cannot establish general personal jurisdiction over him because that he has not engaged in the kind of extensive and pervasive activity in Pennsylvania necessary for a finding of general jurisdiction because he "is a citizen and resident of Georgia," "[h]e worked out of his home in Georgia, and at no time during his employment with Plaintiff did he live in Pennsylvania" only visiting Pennsylvania one time, when he interviewed for the position. Defendant's Supporting Brief, pp. 17-18.

In response, Schwartz first argues:

Defendant's motion to dismiss for lack of personal jurisdiction (pursuant to Rule 12(b)(2)) should be denied because this Court can exercise general personal jurisdiction over McCarthy under his Agreement, which contains a valid forum selection and consent to jurisdiction provision. McCarthy has not (and cannot) establish that this clause (or the Agreement in general) were fraudulently obtained, are contrary to Pennsylvania public policy, or would result in a deprivation of Defendant's "day in court."

Plaintiff's Response to Defendant's Motion to Dismiss, or in the Alternative, to Transfer ("Schwartz's Response"), p. 2. See also Id. at p. 15 ("Although the forum selection clause in the Agreement applies specifically to claims brought in arbitration, it nevertheless is undisputed that McCarthy voluntarily chose to resolve in Pennsylvania all disputes regarding the Agreement or his employment.").

With respect to whether this Court has general subject matter jurisdiction over McCarthy based upon the forum selection clause contained in the Employment Agreement, as admitted by Schwartz, the forum selection clause contained in the Employment Agreement is related to the

7

parties' agreement to arbitrate any disputes under the Agreement in Philadelphia, Pennsylvania. See Employment Agreement, ¶ 10. Contrary to Defendant's argument, we find that this clause alone does not conclusively establish that we have general jurisdiction over McCarthy.

Schwartz further argues that this Court has general jurisdiction over McCarthy because "the terms of McCarthy's employment required him to have continuous and substantial contact with Pennsylvania. Schwartz's Response, p. 17. Specifically:

> Here, McCarthy entered into an agreement containing not only a clause naming Pennsylvania as the selected forum for arbitration of disputes, but also a term that McCarthy relocate to Pennsylvania and work from the home office in Ambridge, Pennsylvania. He traveled to Pennsylvania to interview for the position and had multiple conversations with his supervisor [who] was located in Pennsylvania. Pennsylvania is the nerve center of the Schwartz business and as the U.S. Sales Manager of the Company, he frequently completed his business with those employees based in Pennsylvania.

Id. (internal citations to exhibits omitted).

Upon review of McCarthy's contacts with Pennsylvania as a whole, we agree with McCarthy and find that his contacts with Pennsylvania were not so systematic and continuous such that this Court's jurisdiction over McCarthy is proper under a general personal jurisdiction theory. Therefore, it is necessary to analyze whether we have specific personal jurisdiction over McCarthy.

**2. Specific Personal Jurisdiction.**

McCarthy contends that this Court cannot establish specific personal jurisdiction over him; "McCarthy lacks the requisite minimum contacts with Pennsylvania, and it is clear that the claims asserted do not relate to any forum directed activities. Exercise of jurisdiction over McCarthy would not comport with fair play and substantial justice." Defendant's Supporting Brief p. 19. See also Id. at p. 20 ("McCarthy has demonstrated an absence of sufficient minimum contacts with Pennsylvania. Moreover, none of the claims Plaintiff asserts against

8

McCarthy in the Complaint arose from any alleged activity of McCarthy taking place in

Pennsylvania. To the contrary, it is apparent that Plaintiff's claims arise entirely out of

McCarthy's employment by Timco in Georgia. Accordingly, it cannot be said that Plaintiff's

claims arise from any action of McCarthy's taking place in Pennsylvania, and as a result, this

Court does not have specific personal jurisdiction over McCarthy.").

> To the contrary, Schwartz argues:

> This Court may exercise specific jurisdiction because McCarthy's contacts with
> Pennsylvania are connected to the specific instances of this lawsuit, namely,
> McCarthy's employment with Plaintiff and the Employment Agreement he signed
> ancillary to that employment.
>
> . . .
>
> Here, McCarthy accepted employment with Plaintiff, a Pennsylvania company,
> signed a contract that included 1) that Pennsylvania law would govern the terms
> of the agreement and 2) that McCarthy would move to Pennsylvania to work for
> Plaintiff. Further, although he worked remotely for most of his employment, he
> was directly connected to Pennsylvania in that all of his work either derived from
> the Pennsylvania office or ultimately was communicated and effectuated through
> the Pennsylvania office, as the headquarters and all client services were based in
> Pennsylvania. *See generally* Wagner Decl. McCarthy's entire employment was
> based on activities with the Pennsylvania office. Given this and his agreement to
> arbitrate disputes in Pennsylvania under Pennsylvania law, McCarthy should have
> reasonably anticipated any litigation for potential injunctive relief would also
> occur in Pennsylvania.

Schwartz's Response, pp. 19-20.

Before examining the evidence of record to determine whether McCarthy purposefully

directed his activities at the forum state, and whether the causes of action arise out of those same

activities, we begin by addressing McCarthy's argument that Walter Wagner's Declaration,

which was submitted by Schwartz in support of their Response to McCarthy's pending motion, is

not competent evidence because Wagner "provides no basis for any of the assertions that he

makes regarding Mr. McCarthy's reported contacts with Pennsylvania. In fact it is undisputed,

and as set forth in the Mr. McCarthy's declaration, Mr. Wagner did not even come to the United

9

States until April of 2014. . . ." Transcript of October 2, 2014 Motion Hearing, p. 5. Mr. Wagner stated in his Declaration that all the facts asserted therein were based on his personal knowledge. Defendant could have called Mr. Wagner as a witness at the hearing on jurisdiction in an attempt to show that this assertion was false; he did not do so. Absent evidence to the contrary, for purposes of this Motion, we find that the Wagner Declaration to be competent evidence.

Thus we turn to the evidence in the record relevant to the issue of whether we have specific personal jurisdiction over McCarty. McCarthy currently resides in Georgia and resided there in the years prior to and the entire time he was employed by Schwartz as its Director of Sales for the United States and Canada. McCarthy Declaration, ¶¶ 3, 14, and 18. McCarthy started to work for Schwartz in June 2009 after being initially recruited by the then President of Schwartz, Bernd Nussdorfer, over the telephone while McCarthy was located in Georgia. Id. at ¶¶ 11 and 13. McCarthy and Nussdorfer had worked together in South Carolina earlier in 2009 on a project for a mutual customer. Id. at ¶ 11. Prior to agreeing to work for Schwartz, McCarthy, while in Georgia, also had multiple conversations via telephone and electronic mail ("e-mail") with Nussdorfer and other Schwartz employees about McCarthy coming to work for Schwartz. McCarthy came to Pennsylvania to be interviewed for the position prior to being hired by Schwartz. McCarthy Declaration, ¶ 12.

McCarthy accepted Schwartz's job offer to be its Director of Sales for the United States and Canada on June 8, 2009 by signing, while located in Georgia, a copy of the Schwartz Employment Agreement that is at issue in this case. Id. at ¶ 13.

10

Section 6 of the Agreement is titled "CONFIDENTIALITY, WORK PRODUCT" and

states in pertinent:

(a) Acknowledgement; No Removal of Copying. Employee acknowledges that: (1) the Company's products are highly specialized items; (2) the identity and particular needs of the Company's customers are not generally known in the industry; (3) the Company has a proprietary interest in the identity of its customers and customer lists; and (4) documents and information regarding the Company's methods of production, sales, pricing, costs, and the specialized requirements of the Company's customers, are highly confidential, and constitute trade secrets. Under no circumstances shall Employee remove from the Company's office any of the Company's books, records, documents, or customer lists, or any copies of such documents, without the written permission of the Company; nor shall Employee make any copies of such books, records, documents, or customer lists, for use outside of the Company's office except as specifically authorized by the Company.

(b) Confidentiality; Return of Information. During the term of this Agreement, Employee will have access to and become familiar with various trade secrets and confidential information of the Company including, but not necessarily limited to the documents and information referred to in paragraph (a) above (collectively, "Confidential Information")[.] Employee acknowledges that such Confidential Information and trade secrets are owned and shall continue to be owned solely by the Company. During the term of his employment and after such employment terminates, Employee will keep all Confidential Information in strict confidence during the term and thereafter and will never, directly or indirectly, make known, divulge, reveal, furnish, make available or use any Confidential Information (except in the course of his regular authorized duties on behalf of the Company or an affiliate of the Company). Furthermore, Employee will not utilize any Confidential Information for his own benefit or the benefit of others during the term and thereafter. Employee's obligations of confidentiality hereunder will survive termination of his employment and of this Agreement regardless of any Actual or alleged breach by the Company of this Agreement, until and unless any such Confidential Information becomes, through no fault of Employee, generally known to the public or Employee is required by law to make disclosure (after giving the Company notice and an opportunity to contest such requirement). Employee's obligations under this Article 6 are in addition to, and not in limitation or preemption of, all other obligations of confidentiality which the Employee may have to the Company under general legal or equitable principles.

Upon the request of the Board or, without the need for any such request, upon the termination of Employee's employment hereunder, Employee shall return to the Company all files (whether in printed or electronic form), disks and documents (and any copies thereof) concerning the business of the Company or any affiliate of the Company in his possession or to which he has access, including without

limitation, all customer lists, price lists, printed material, documents, notes and drafts, regardless of whether or not the same were originally furnished to Employee by the Company or any affiliate of the Company .

Agreement, ¶ 6 (a) and (b).

The covenant not-to-compete is contained in Section 7 of the Employment Agreement:

(a) <u>Non-Compete</u>. During the term of this Agreement and for a period of two (2) years …after a termination for the reasons set forth in Section 2 becomes effective (i) Employee will neither directly nor indirectly engage in or contribute his knowledge to any work or activity that involves semi-finished or finished products made of case polyamide (Pa6/PA12) and compressed moulded phenolics ("Competitive Work"), (ii) Employee will not accept employment with or provide consulting service to Quadrant; Rochling Sustaplast, Kern, Ensinger, Licharz or other competitors that produce or intend to produce finished parts made out of Polyamide, and (iii) Employee will not solicit or induce or attempt to solicit or induce employees of the Company to terminate their employment with the Company.

(b) <u>Adjustments</u> . The parties have attempted to limit Employee's right to compete only to the extent necessary to protect the Company's trade secrets and customer basis    The parties recognize, however, that reasonable people may differ in making such a determination[.] Consequently, the parties hereby agree that, if the scope of enforceability of the restrictive covenant is in any way disputed at any time, a court or other trier of fact may modify and enforce the covenant to the extent that it believes to be reasonable under the circumstances existing at that time.

<u>Id</u>. at ¶ 7.

The Agreement provided that: "Employee and the Company agree that any claim, controversy or dispute between Employee and the Company . . . arising out of or relating to this Agreement, the employment of Employee, the cessation of employment of Employee, or any matter relating to the foregoing shall be submitted to and settled by arbitration in a forum of the American Arbitration Association ("AAA") located in Philadelphia, Pennsylvania conducted in accordance with the National Rules for the Resolution of Employment Disputes." <u>Id</u>. at ¶ 8(b). The Agreement contains a choice of law clause: it is entitled "GOVERNING LAW" and states : "This Agreement shall be subject to and governed by the laws of the Commonwealth of

Pennsylvania, without giving effect to the principles of conflict of laws of such Commonwealth." Employment Agreement, ¶ 10.

Although a term of the Agreement was that McCarthy was to work at Schwartz's Ambridge location, see Agreement ¶ 1(e), he never moved to Pennsylvania; the entire time McCarthy worked for Schwartz, from June 2009 to April 2014, he worked out of his home in Georgia. McCarthy Declaration, ¶ 17.

Mr. Nussdorfer resigned from Schwartz in November 2013. Id. at ¶ 25. He was replaced by Walter Wagner, who moved to Pennsylvania in April 2014. Id. When McCarthy resigned from Schwartz on April 30, 2014 he did so, in person, to Wagner. Id. at ¶ 27.

McCarthy began to work for Timco as its Regional Sales Manager on May 4, 2014; Timco also is a company in the technical plastics industry; it is a corporation organized under the laws of the state of New York with its principal place of business in Buchanan, New York. Id. at ¶¶ 31 and 36. McCarthy continues to reside in and work out of Georgia while employed by Timco. Id. Timco does not have any operations in Pennsylvania. Id.

Schwartz is headquartered in Ambridge, Pennsylvania. Declaration of Walter Wagner, ¶ 2. The headquarters has provided essential administrative and support services to its employees, located in Pennsylvania and other locations. Id. at ¶ 3. McCarthy's supervisor was located in Pennsylvania, all office services were located in Pennsylvania and any issues related to customer service, or with respect to customer contracts and other matters, would be addressed from Schwartz's Pennsylvania location. Id. at ¶ 4. Pennsylvania is the nerve center of the Schwartz business and as its U.S. Sales Manager, McCarthy frequently completed his business with Schwartz employees based in Pennsylvania. Id. at ¶ 7.

13

Based upon the above-stated facts, we find that having entered into an employment contract with an employer based in Pennsylvania that contained a choice of law provision stating that Pennsylvania law was to be applied to any contractual disputes, and having worked for the company for almost five (5) years as its National Sales Manager, during which time he was supervised out of Pennsylvania, frequently completed his business with Schwartz employees based in Pennsylvania, was provided with essential administrative and support services, including addressing any issues related to customer service, or with respect to customer contracts and other matters, McCarthy purposefully directed his activities at the forum state. We further find that the causes of action contained in the Schwartz's Complaint against him, breach of the parties' Employment Agreement and misappropriation of trade secrets and other confidential information relating to Schwartz's products and current and prospective customers acquired during his employment, arise out of these purposefully directed activities.

Finally, the Court finds that the quality, quantity and relatedness of McCarthy's contacts with Pennsylvania - accepting employment with a Pennsylvania-based company, working for them for almost five (5) years, albeit out-of-state, regularly communicating and otherwise utilizing the services of the employees located in Pennsylvania to do his sales job – support a finding that sufficient minimum contacts exist such that this Court's exercise of personal jurisdiction over McCarthy comports with due process.

**II. Motion to Dismiss Plaintiff's claims for breach of contract and misappropriation of trade secrets for failure to state claims upon which relief can be granted.**

Having concluded that the Court has personal jurisdiction over McCarthy, we turn next to his contention that Schwartz's breach of contract and misappropriation of trade secret claims

must be dismissed for failure to state a claim upon which relief can be granted because Georgia law is applicable to these claims and under Georgia law, the Agreement is unenforceable.

To the contrary, Schwartz contends that Pennsylvania law should be applied and under Pennsylvania law, its Complaint sets forth claims for breach of contract and misappropriation of trade secrets upon which relief can be granted.

### A. Count I- Breach of Contract claim.

Where, as here, jurisdiction is based upon diversity, a federal court should apply the choice of law rules of the forum state, here Pennsylvania. Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941); Kruzits v. Okuma Machine Tool, Inc., 40 F.3d 52, 55 (3d Cir. 1994). Under Pennsylvania law, "courts generally honor the intent of the contracting parties and enforce choice of law provisions in contracts executed by them." Id. As indicated above, the Agreement contains such a choice of law provision: "GOVERNING LAW" -- "This Agreement shall be subject to and governed by the laws of the Commonwealth of Pennsylvania, without giving effect to the principles of conflict of laws of such Commonwealth." Agreement, §10.

To determine whether to enforce the choice of law provision contained in the Agreement, we turn to Section 187(2) of the Restatement (Second) of Conflicts of Law, which Pennsylvania courts have adopted. It states:

(1) The law of the state chosen by the parties to govern their contractual rights and duties will be applied if the particular issue is one which the parties could have resolved by an explicit provision in their agreement directed to that issue.

(2) The law of the state chosen by the parties to govern their contractual rights and duties will be applied, even if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement directed to that issue, unless either

  (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or

(b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.

Restatement (Second) of Conflicts of Law, § 187.

Applying § 187 of the Restatement (Second) of Conflicts to the facts of this case, we find that we must enforce the choice of law provision contained in the Agreement and apply Pennsylvania law to the parties' dispute relevant to the Agreement. We so find first because the chosen state, Pennsylvania, does have a substantial connection to the parties; Pennsylvania is where Schwartz is headquartered and is where for almost five (5) years McCarthy regularly communicated with and otherwise utilized the services of Schwartz employees located in Pennsylvania to do his job as Schwartz's National Sales Manager. Second, we find that Pennsylvania has a substantial relationship to the Agreement pursuant to which McCarthy became an employee of a corporation headquartered in Pennsylvania. Third, based upon Pennsylvania being the location of Schwartz's headquarters and where it provided administrative support to McCarthy for his sales position, we conclude that there was a reasonable basis for the parties' agreeing to make Pennsylvania law controlling with respect to the Agreement. Finally, we find that Georgia does not have a materially greater interest than does Pennsylvania in the determination of the particular issue (whether McCarthy breached the Agreement) even assuming that the enforcement of the Agreement will prevent McCarthy, a Georgia citizen, from being employed in a given field for two years. We so find because we conclude that Pennsylvania's interest in ensuring that corporations headquartered in this Commonwealth are able to have uniformity in their dealings with their employees throughout the country is at least equal to Georgia's interest in protecting its citizens' ability to work. In so concluding, we

16

borrow from the decision of the court in <u>SKF USA Inc. v. Okkerse</u>, 992 F.Supp2d 432 (E.D. PA. 2014), who was faced with a fact scenario similar to ours:

> Defendants have failed to establish that [Georgia's] interest in this case is materially greater than Pennsylvania's. It is not enough to assert that [Georgia] has a greater interest simply because application of Pennsylvania law runs contrary to a fundamental [Georgia] policy. Moreover, the fact that Defendant[] may live in [Georgia], work in [Georgia], or signed [his] Agreement[] in [Georgia] does not necessarily establish that [Georgia] has a materially greater interest than Pennsylvania. In focusing upon [Georgia's] prohibition on . . . non-competition, and non-solicitation agreements, Defendant[] ha[s] failed to address the interest that Pennsylvania has in this case.
>
> Pennsylvania has an interest in enforcing a voluntarily negotiated contract that explicitly designates the application of Pennsylvania law. This interest stems, at least in part, from the recognition that uniformity of contract serves a strong public policy. See <u>Hopkins v. GNC Franchising, Inc.</u>, No. 05–1510, 2006 WL 2266253, at *4 (E.D. Pa. Jan. 13, 2006); <u>see also</u> Restatement (Second) of Conflict of Laws § 187 cmt. e (1971) ("Prime objectives of contract law are to protect the justified expectations of the parties and to make it possible for them to foretell with accuracy what will be their rights and liabilities under the contract.") Equally apparent is the fact that Pennsylvania has an interest in protecting companies that conduct business within its borders. The Supreme Court of Pennsylvania has recognized that non-competition agreements "have developed into important business tools to allow employers to prevent their employees and agents from learning trade secrets, befriending their customers and then moving into competition with them." <u>Victaulic Co. v. Tieman</u>, 499 F.3d 227, 237 (3d Cir.2007) (<u>quoting</u> <u>Hess v. Gebhard & Co. Inc.</u>, 570 Pa. 148, 808 A.2d 912, 918 (2002)). Therefore, although non-competition agreements are generally disfavored, courts have recognized that the public has an interest in the enforcement of agreements that are "freely entered into by the parties." <u>Coventry First, LLC v. Ingrassia</u>, No. 05–2802, 2005 WL 1625042, at *12 (E.D.Pa. July 11, 2005).
>
> We cannot say that [Georgia's] interest in this case is materially greater than Pennsylvania's. This is not a case where both parties are citizens of [Georgia]. Plaintiff is a national company with . . . employees located in multiple states. Moreover, the choice of law clause at issue here designates the law of the state in which Plaintiff maintains a principle place of business.

<u>Id</u>. at 441. <u>See also</u> <u>Select Medical Corp. v. Hardaway</u>, 2006 WL 859741, *3 (E.D. PA.) (court held in diversity case between Pennsylvania corporation and individual who resided in Texas

involving alleged breach of former employee's confidentiality and non-compete agreements that Pennsylvania law should apply as opposed to Texas law because "[r]egardless of Texas's interest in the transactions of its citizens, Pennsylvania corporations have an interest in uniformity in dealings with their locations throughout the country.").

As such, given that Defendant's Rule 12(b)(6) motion to dismiss Plaintiff's breach of contract claim was premised upon Georgia law being applicable, and we conclude that Georgia law is not applicable to these claims, Defendant's Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted is denied as to Plaintiff's breach of contract claim against him.

### B. Count II- Misappropriation of Trade Secrets claim.

We turn next to McCarthy's argument that the misappropriation of trade secrets claim against him must be dismissed for failure to state a claim upon which relief can be granted. Defendant's Supporting Brief, p. 15. In particular, McCarthy's argument is that: "Plaintiff has not alleged that McCarthy took one item in support of its trade secret claim. Rather, it has simply alleged that by accepting employment with a competitor, it is inevitable that McCarthy will misappropriate Plaintiff's trade secrets" and "these allegations do not state a claim under Georgia law. The Supreme Court of Georgia recently rejected the inevitable disclosure doctrine." Id. at pp.15-16 (footnote containing choice of law analysis omitted) (citing Holton v. Physician Oncology Services, 292 Ga. 864, 866-70, 742 S.E.2d 703, 706 (2013).

The difficulty with Defendant's argument is that the Supreme Court of Georgia has not conclusively rejected the inevitable disclosure doctrine. See Saint-Gobain Corp. v. Miller, 2014 WL 6686787, *7 (D.S.C.), appeal filed, (4th Cir.) (citing Holton, supra.) ("it is not clear whether

the inevitable disclosure doctrine is applicable pursuant to Georgia law." ). Rather, in Holton the Supreme Court of Georgia held only:

> that the inevitable disclosure doctrine is not an independent claim under which a trial court may enjoin an employee from working for an employer or disclosing trade secrets. . . . Because it appears that the trial court did not reach [the plaintiff's] claim for actual or threatened misappropriation of trade secrets and the case returns to the trial court for a final adjudication of the merits, we decline to address today whether the inevitable disclosure doctrine may be applied to support a claim for the threatened misappropriation of trade secrets.

Id. at 706. This is significant because Plaintiff's misappropriation of trade secrets claim alleges "[b]y accepting employment as a[] Regional Sales Manager with a direct competitor of Schwartz, McCarthy has and will continue to misappropriate *or threaten to misappropriate* Schwartz's confidential/proprietary information and trade secrets. . . ." Complaint, ¶ 71 (emphasis added). Moreover, absent from McCarthy's argument on this issue is a complete analysis of the complicated choice of law issue that needs to be addressed prior to determining whether the law of Pennsylvania or Georgia should be applied to the Plaintiff's misappropriation of trade secrets claim; the totality of Plaintiff's discussion of why Georgia law should apply to Plaintiff's trade secret claim is contained in a footnote. See Riordan v. H.J. Heinz Co., 2009 WL 2485958, *3-4 (W.D. Pa.).

Accordingly, Defendant's Motion to dismiss Plaintiff's misappropriation of trade secret claim for failure to state a claim upon which relief can be granted is denied.

**III. Motion to Transfer pursuant to 28 U.S.C. § 1404(a).**

28 U.S.C. § 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." In deciding whether to transfer a case, a court must consider "the private and public.

19

interests protected by the language of § 1404(a)." Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir. 1995). "[T]here is no definitive formula or list of the factors to consider . . . ." Id. Private interests that have been considered include: "[P]laintiff's forum preference as manifested in the original choice; the defendant's preference; whether the claim arose elsewhere; the convenience of the parties as indicated by their relative physical and financial condition; the convenience of the witnesses-but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum)." Id. (internal citations omitted). Public interests that have been considered include: "[T]he enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; the public policies of the fora; and the familiarity of the trial judge with the applicable state law in diversity cases." Id. at 879–80 (internal citations omitted).

McCarthy argues that in the event we do not grant his Motion to Dismiss for failure to state a claim upon which relief can be granted or for lack of personal jurisdiction over him, transfer is warranted under 28 U.S.C. § 1404(a) because the action could have been brought originally in the proposed transferee court, the United States District Court for the Northern District of Georgia, and "nearly all of the relevant Section 1404(a) factors counsel strongly in favor of transferring this action to the Northern District of Georgia." Defendant's Supporting Brief, pp. 21-23. More specifically, with respect to whether the private interest factors weigh in favor of transfer, McCarthy argues first that "[w]hile a plaintiff's choice of forum is typically of great importance, 'the deference given to a plaintiff's choice of forum is reduced when the

operative facts that give rise to the action occur in another district'" and "[h]ere . . . . it is

apparent that none of the events about which Plaintiff complains and which give rise to its claims

against McCarthy occurred in the Western District of Pennsylvania." Id. at p. 23. He also

contends that obviously, he'd prefer to litigate this case in Georgia, Georgia is the primary locus

of the dispute, it would be a heavy financial burden for him, an individual resident of Georgia, to

defend himself in Pennsylvania as opposed to a court in Georgia where his counsel already has

an office, and numerous fact witnesses in this case reside outside of Pennsylvania.

Id. at pp. 23-24. With respect to whether the public interest factors weigh in favor of transfer,

McCarthy argues: (1) "there is a strong local interest in Georgia for this action to be resolved

there, as the primary issue in this litigation is the enforceability of certain restrictive covenants

that, while contrary to the public policy of Georgia and unenforceable under Georgia law, would,

if enforced, prevent McCarthy from working in Georgia; (2) Georgia law applies to the

covenants in the Agreement, and so it would be better that the federal court in Georgia, who is

familiar with Georgia law, decide the case. Id. at pp. 24-25.

> In response, Schwartz argues:
>
> the contract was drafted in Pennsylvania, McCarthy interviewed for the position
> in Pennsylvania, signed the contract with a provision that Pennsylvania law would
> govern and that McCarthy himself would move to Pennsylvania as a term of his
> employment, he conducted sales between customers and the company based in
> Pennsylvania and when he breached the contract, the Pennsylvania company
> needed to conduct all necessary actions to assess the breach and initiate the search
> for his replacement. In addition, the competitive and confidential information
> which McCarthy has used to breach his contractual and statutory obligations to
> Schwartz was maintained by Schwartz in, and misappropriated from,
> Pennsylvania.

Id. at pp. 21-22. Additionally, Schwartz contends that its choice of forum is entitled to great

deference, that private interests should not be considered because McCarthy has waived any

argument as to any purported inconvenience to himself or his witnesses as a result of his

agreeing to litigate the case in Pennsylvania through arbitration, and that the public factors do not favor transfer in that Pennsylvania law, not Georgia law, is applicable to the case and this Court is more familiar with Pennsylvania law than is the Northern District of Georgia, Pennsylvania has an interest in protecting the interests of employers doing business in Pennsylvania from harm resulting from employees' breaches of their restrictive covenants and in providing uniformity to a Pennsylvania employer in its dealings with employees, and "with the sole exception of McCarthy himself, relevant witnesses and documents maintained and controlled by the Company are in large part in Pennsylvania. Id. at pp. 22-26

The burden of establishing the need for transfer rests with the movant, here McCarthy, and "in ruling on defendants' motion the plaintiff's choice of venue should not be lightly disturbed." Jumara, 55 F.3d at 879; see also Shutte v. Armco Steel Corp., 431 F.2d 22, 25 (3d Cir.1970) ("It is black letter law that a plaintiff's choice of a proper forum is a paramount consideration in any determination of a transfer request...."). Having considered McCarthy's argument on this issue, we find that he has failed to establish that the balance of private and public interests weighs in favor of the requested transfer. In particular, with respect to the private factors, many of the events underlying this matter occurred in Georgia. But relevant events also occurred in Pennsylvania, in that the contract was drafted in Pennsylvania, the trade secrets originated from Pennsylvania and the alleged injuries were suffered in Pennsylvania. Further, witnesses and documentation appears to be equally available in both Pennsylvania and Georgia. Finally, no evidence has been introduced as to the relative wealth of the parties and while it is inconvenient and expensive for McCarthy to litigate this matter in Pennsylvania, it is equally inconvenient and expensive for Schwartz to do so in Georgia. As for the public factors, neither court significantly more congested than the other court, and a judgment rendered in this

Court is equally as enforceable as one rendered by a Northern District of Georgia court. As for the local interest in deciding local controversies at home, we find that while the Georgia federal court may have an interest in deciding this case, this Court has at least an equal interest in deciding the case because it involves alleged injuries sustained by a local Pennsylvania company. With respect to the familiarity of the trial judge with applicable state law, we have already concluded that at least as to the breach of contract claim, this case is governed by Pennsylvania law, such that having it decided by a judge who has spent almost forty (40) years on the bench applying Pennsylvania law is preferable to transferring it to a judge who may, or may not, have ever decided a case applying Pennsylvania law. And if Georgia law is found to be applicable to the misappropriation of trade secrets claim, then the factor is neutral because in each forum the trial judge will be more familiar with one state's law than would the judge in the other forum.

Accordingly, Defendant's Motion to Transfer must be denied.

**IV. Conclusion and Plaintiff's Motion to Commence Discovery.**

Having concluded that we have jurisdiction over McCarthy, that all of the claims in Plaintiff's Complaint remain viable for now, and that this is the proper venue in which the litigation should proceed, a hearing on Plaintiff's Motion for Preliminary Injunction shall be scheduled forthwith. To accommodate the Defendant being located outside of this District along with the Court's schedule, the hearing will be held on April 29, 2015 at 10:00 a.m. in Courtroom 8A, 8170 U.S. Courthouse, 700 Grant Street, Pittsburgh, PA 15219.

Related to this hearing is Plaintiff's Motion to Commence Discovery; by this motion, Schwartz seeks expedited discovery prior to the preliminary injunction hearing. We are denying Plaintiff's Motion to Commence Discovery. Plaintiff's request for discovery, both in general, and specifically with respect to gaining access to Defendant's personal and work (Timco)

computers, is overly broad. <u>See</u>, for example, Plaintiff's Motion to Commence Discovery, ¶ 12 ("Schwartz now seeks to commence discovery immediately to obtain evidence relevant to its claims for breach of contract and misappropriation of trade secrets"); ¶ 15 ("Schwartz seeks to discover information which is reasonable in scope, is in the exclusive possession of Defendant, and cannot be ascertained without the opportunity to commence discovery immediately"); and ¶16 and Proposed Order "(Schwartz is requesting that McCarthy make his personal computer available for inspection within seven (7) days and that Timco make McCarthy's work computer available for inspection within seven (7) days" "for inspection and creation of bit stream mirror images by an independent computer forensic expert retained by Plaintiff").

An appropriate Order follows:

## ORDER

AND NOW, this 31st day of March, 2015, it is hereby ORDERED, ADJUDGED, and DECREED that Defendant's Motion to Dismiss, or in the Alternative, to Transfer is DENIED.

It is further hereby ORDERED, ADJUDGED, and DECREED that Plaintiff's Motion to Commence Discovery is DENIED.

It is further hereby ORDERED, ADJUDGED, and DECREED that a hearing on Plaintiff's Motion for Preliminary Injunction shall be held on April 29, 2015 at 10:00 a.m. in Courtroom 8A, 8170 U.S. Courthouse, 700 Grant Street, Pittsburgh, PA 15219.

Maurice B. Cohill, Jr.
Senior United States District Court Judge